UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

2006 DEC 28 P 2:30

UNITED STATES OF AMERICA,

    Plaintiff,

                                          Civil No. 02-81150
                                          Hon. John Feikens

v.

D-3, KATHLEEN DOCHERTY,

    Defendant.

_____/

## OPINION REGARDING SENTENCE

On November 15, 2006, I re-sentenced Kathleen Docherty under United States v. Booker, 543 U.S. 220 (2005), and imposed the same sentence that I had previously, including a term of imprisonment of 188 months. (Judgment Nov. 15, 2006; Judgment, October 31, 2003.) I write now to explain the basis for my decision on imprisonment.

**BACKGROUND**

On April 24, 2003, Defendant pleaded guilty to six counts involving the possession, distribution, and conspiracy to distribute "ecstasy"; the illegal conduct occurred prior to November of 2002. (Pre-Sentence Report, 6.) Ecstasy has two chemical forms, abbreviated MDA and MDMA. United States v. Rodriguez-Preciado, 399 F.3d 1118, 1124 (9th Cir. 2005). Docherty did not make any admission as to quantities of drugs when she entered her plea.

There were laboratory tests on a total of 2,062 pills Defendant contends offer a reliable estimate of those involved in her crimes. (Def.'s Supplemental Sentencing Memo., 2.) After

initial briefing from the parties contained seemingly contradictory accounts of the laboratory data, I requested that the parties submit a joint briefing regarding that data. Both sides submitted a joint brief regarding the use of lab results and the resulting sentencing guideline range, assuming the distribution of 100,000 tablets based on a number of different calculation possibilities. Of the tablets considered by the parties in the joint briefing (2,499), a sizable majority of them (1,465) contained a mix of MDA or MDMA and methamphetamine. (Joint Br. at 3-4.) A noticeable minority (1,020) contained either MDA alone or MDMA alone. Id. The table below summarizes the results of a number of calculation methods that use either the averages of the lab data or the lightest measure weight of tablets containing some ecstasy.

| Method | Equivalent of Kilograms of Marijuana | Base Offense Level |
| --- | --- | --- |
| Use lightest tablet weight of all tablets, and assume an MDA/MDMA plus methamphetamine mix | 44,800 | 38 |
| Use average tablet weight of all tablets, and assume tablets of MDA/MDMA | 11,650 | 36 |
| Use lightest tablet weight of MDA/MDMA tablets, and assume tablets of MDA/MDMA | 12,000 | 36 |
| Use average active ingredient weight of MDA or MDMA for all tablets containing either, and assume tablets of MDA/MDMA[1] | 18,000 | 36 |
| Use lightest active ingredient weight for MDA/methamphetamine tablets and assume tablets of MDA/MDMA plus methamphetamine mix | 15,100 | 36 |
| Use lightest active ingredient weight for MDA/MDMA tablets, and assume tablets of MDA/MDMA | 2,500 | 32 |

---

[1]This figure does not come from the parties' joint briefing, but is calculated using the numbers provided there. All other calculations are from the joint briefing.

**ANALYSIS**

Defendant offered three arguments for why she should have in a lower sentence: (1) the number of tablets attributed to her are too high; (2) the weight of the drugs in those tablets were calculated using the wrong guidelines, resulting in a base offense level that was too high; and (3) Defendant was erroneously found to be a manager within the meaning of U.S.S.G. § 3B1.1.

**A. Number of Tablets and Managerial Role**

On the issues of how many tablets were involved in Defendant's offenses and whether Defendant was a manager, she essentially asks me to revisit my previous factual findings that were made following an evidentiary hearing. At that hearing, Thomas Leto, a co-defendant, offered testimony that I relied on in my findings that she was a manager and that the number of tablets was 100,000. (Sent. Tr. 7-II through 11-II.) Another co-defendant, Joseph Jeross, now offers conflicting statements. (Docherty Response Memo, Sept. 2006.) I find Leto to be a more truthful and credible individual than Jeross, and therefore, there is no reason to alter my previous findings on these issues.

**B. Timing of the Quantity Calculations Issue**

The government suggests that because Defendant did not raise the guidelines calculation issue at the initial sentencing, this argument cannot now be raised. (Gov't Memo at 6.) Binding precedent, however, requires me to hear this argument on a Booker resentencing, because it pertains to the calculation of the guidelines. United States v. Davis, 397 F.3d 340, 345 (6th Cir. 2005) (holding that even though the guidelines are advisory, they still must be correctly determined).

## C. Quantity Calculations

As explained below, use of the laboratory data is appropriate under all potentially applicable Guidelines, and that data supports a base offense level of 36. I find the more plausible calculations using the lab data result in a base offense level of 36. There were different guidelines in place at the time of the offense and the sentencing: those that were in place at the time of the offense listed a "typical weight" of the active ingredient in the MDA form of ecstasy to be 100 mg; no typical weight was given for the MDMA form. Those in place at the time of sentencing listed a typical weight of 250 mg per tablet for both MDMA and MDA. (U.S.S.G. § 2D1.1, comment 11.) Docherty argues that because most of the pills seized contained MDA and not MDMA, and because the guidelines at the time of the conspiracy listed a typical weight of 100 mg, the correct calculation of the guidelines would be made using the older manual. Defendant is correct that if the older guidelines recommend a lesser punishment, then the older guidelines apply. E.g., Miller v. Florida, 482 U.S. 423 (1987). The parties' differ on the interpretation of the earlier guideline, and if I were to accept Defendant's interpretation of the earlier guideline, the suggested imprisonment range would be lower.[2]

I do not have to decide what interpretation of the earlier guideline is, however, because both versions of the guidelines require that if "more reliable forms" of calculation are available, those should be used to determine the amount of drugs at issue, instead of using the typical weights table. U.S.S.G. § 2D1.1, application note 11; see also United States v. Roche, 415 F.3d

---

[2]Previously, I resentenced Joseph Jcross, and found I did not have to examine the laboratory data, due to a mistaken calculation that the use of the 100 mg figure would result in a equivalency of 10,000 KG, not the correct 5,000 KG. (The equivalency of 10,000 KG would not lower the base offense level.) That sentence is currently on appeal.

4

614, 619 (7th Cir. 2005). Here, there are lab data available, and I find them to be more reliable than the typical weights table. I will now turn to the use of the data.

Of all the calculations using the lab data, only one method results in a base offense level of less than 36. That method applies the lightest active ingredient weight for those pills that contain only ecstasy, and results in a base offense level of 32. (See Joint Br. at 8.) This method is not a plausible interpretation of the guidelines, since precedent provides that courts should not lower the quantity calculations by considering active ingredient weight only. United States v. Roche, 415 F.3d 614, 619 (7th Cir. 2005) ("Yet even under the 2000 Manual, the defendant is responsible for the weight of the whole tablet, not just the active ingredient.").

Even if I could consider active ingredient weight, however, the only calculation to result in a base offense level lower than 36 assumes both that the lightest active ingredient weight represents all 100,000 tablets, and also ignores the methamphetamine that was present in the majority of the pills tested. The Sixth Circuit provides that when choosing between a number of plausible estimates of drug quantity, a court must err in favor of the defendant. United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990). In this case, however, using the calculation that Defendant urges would require using the active ingredient weight (instead of the tablet weight), then using the lowest measure of that weight in the calculation (instead of the average), and finally assuming all pills contained only ecstasy (ignoring the presence of methamphetamine in the majority of the pills being considered). The rule of lenity does not require this Court to accept such an implausible calculation. The lab results indicate that the quantity of drugs present supports a base offense level of 36. This leads to a guideline sentencing range for imprisonment of 188 to 235 months.

### D. Factors under § 3553(a)

Defendant has no prior history of criminal conduct, completed her associate's degree, volunteered in the community, and was enrolled in college at the time of the offense. While her education, family ties, and lack of prior criminal conduct are in her favor, her situation also means that unlike many Defendants who come before me, she did not turn to selling drugs out of desperation. Her conduct here was also quite serious: while raising a young child in her home, she conspired to sell large quantity drugs out of that home, a decision which has large impacts for society and her child. Although her attorney emphasizes that the failure of a business left Defendant in a desperate financial situation in which she faced loss of her home, the pre-sentence reported noted that after her arrest, her parents bought her home after she defaulted and she continued to live there. It also notes that her ex-husband did pay her child support.

Therefore, although she has many characteristics that indicate the low end of the range is appropriate, I think the seriousness of the offense, the need for deterrence and respect for the law, the need for uniformity of sentence, and the need to protect the public all lie in favor of staying within the guideline range.

### CONCLUSION

For the reasons above, the sentence of 188 months is reasonable.

*John Feikens*
John Feikens
United States District Judge

Date: Dec. 28, 2006