UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN DOCHERTY,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

Civil Case No. 10-10427
Criminal Case No. 02-81150

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE**
(docket no. 161), **MOTION TO DEPOSE WITNESSES** (docket no. 183),
**EX PARTE MOTION FOR ORDER ALLOWING POLYGRAPH
EXAMINATION** (docket no. 184), **AND SECOND MOTION FOR BOND
AWAITING FINAL DISPOSITION OF § 2255 MOTION** (docket no. 192)

    Petitioner Kathleen Docherty was sentenced to 188 months' imprisonment after pleading guilty to six counts of an indictment, including: conspiracy to possess with intent to distribute, distribution of a controlled substance, and aiding and abetting in the distribution of a controlled substance. Criminal Indictment (docket no. 1). Docherty filed a motion to vacate her conviction and sentence pursuant to 28 U.S.C. § 2255, contending that she was deprived the effective assistance of counsel because her trial counsel labored under an actual conflict of interest, which resulted in counsel's failure to negotiate a cooperation agreement with the government, and counsel's gross mischaracterization of Docherty's sentence exposure. Docherty has also moved for discovery in the matter, and for bond awaiting disposition of her motion. For the following reasons, the Court will deny Docherty's motion to vacate sentence, motion to depose witnesses, ex parte motion for a polygraph examination, and second motion for bond.

**BACKGROUND**

Docherty seeks to vacate the sentence she received in 2006 after pleading guilty to six counts of an indictment pertaining to drug-related offenses. The indictment related to conduct occurring between December 2001 and August 2002, and also charged co-conspirators Joseph Jeross, Adam Donald, and Thomas Leo.

. A. State Charges

Prior to Docherty's federal indictment, she was arrested in Oakland County on June 18, 2002 on charges of delivering and manufacturing a controlled substance. Docherty retained Attorney Wright Blake to represent her against these charges. *See* Mot. to Vacate at 2 (docket no. 161); Blake Aff. ¶¶ 2-3 (docket no. 188). According to Docherty, the state case overlapped with, and eventually became subsumed in, her subsequent federal indictment, and the state prosecutor dropped his charges on December 5, 2002. Docherty Supp. Aff. ¶ 1; Gov't Resp. to Mot. to Vacate at 2.

B. First Federal Indictment

On August 8, 2002, a search warrant was executed at Docherty's residence, and an arrest warrant was issued for Docherty, Donald, and Leto. Case No. 02-mj-80717. As a result, Docherty, Donald, Leto, and Jeross were arrested. Mot. to Vacate at 2. The next day, a federal indictment was issued as to Docherty, Donald, and Leto. Case No. 02-mj-80717, docket no. 1. The indictment was based, in part, on the conduct underlying the state charges. Gov't Resp. to Mot. to Vacate at 2. During her arrest, Docherty initially told police that she was willing to cooperate in the investigation after her daughter was removed from the premises. *See* Customs Agent Report at 2 (docket no. 190, ex. K).

Docherty made her first appearance pertaining to the August 2002 federal indictment

on August 9, 2002, and the record reflects that no attorney was present on her behalf at that time. Docherty alleges that upon her release that same day, she contacted Blake to represent her in the federal case. Docherty Aff. ¶ 2. At that time, she informed Blake that Jeross had also been arrested and would need representation. Id.

The complaint was dismissed without prejudice on August 28, 2002. Case No. 02-80717, Docket No. 15.

C. Second Federal Indictment

On December 17, 2002, the government filed a second indictment as to Docherty, Donald, Leto, and Jeross. It is this indictment that resulted in the conviction and sentence which Docherty seeks to vacate.

1. Counsel

The central issue in this case pertains to whether Docherty's trial counsel was laboring under an actual conflict of interest. The factual scenario surrounding Docherty's representation is complicated.

Docherty alleges that she personally met with Blake, who represented her in the state court proceedings, and "had a substantive attorney-client consultation with respect to the instant case, and he counseled [her] not to cooperate with the government as a witness against the other defendants." Id. ¶ 4. Moreover, at some point, Blake informed the government that he would be representing Docherty in the case. See Gov't Mot. & Br. for Hr'g on Conflict of Interest at 2 (docket no. 28). Blake contends, however, that he was contacted in August 2002 by Jeross, and that his only substantive contact with Docherty after her federal indictment was to inform her that he could not represent both her and

3

Jeross, and to recommend that she be represented by another attorney, Byron Pitts.[1] Blake Aff. ¶¶ 6-7.

While the nature of Blake's representation of Docherty is contested, what is clear is that sometime between August 2002 and January 17, 2003, it was decided that Blake would represent Jeross and that Pitts would represent Docherty. *See* Jeross Aff. ¶¶ 2,4. The record reflects that Blake agreed to represent Jeross as early as August 12, 2002, and that Jeross paid Blake a substantial sum of money as a retainer. Jeross Aff. ¶ 3. Jeross and Docherty assert that the retainer was to benefit them both, and that Pitts was paid out of the retainer given to Blake by Jeross. *See id.*; Docherty Aff. ¶ 3. Blake and Pitts contend, however, that the retainer was solely for Jeross's benefit, and that Pitts was paid separately by Docherty. Blake Aff. ¶ 6; Pitts Aff. ¶ 1.

1. Conflict of Interest Hearing

In April 2003, the government filed a combined motion and brief for a hearing on what the government perceived to be a potential conflict of interest "in relation to the representation of [Jeross] and [Docherty] by Attorney Wright W. Blake and Attorney Byron Pitts, respectively." Gov't Mot. & Br. for Hr'g on Conflict of Int. at 1. Specifically the government was concerned that: 1) Blake and Pitts appeared to be employed at the same law firm; 2) Blake had previously informed the government, prior to Jeross's indictment, that he would be representing Docherty in the matter; and 3) Blake represented both Jeross and Docherty in relation to civil forfeiture proceedings instituted against them. *Id.* at 1-2.

---

[1]Blake contends his representation of Docherty as to the state charges had ended by the time he began representing Jeross. Blake Aff. ¶ 4. The case, however, was not dismissed until December 2002.

A conflict of interest hearing was conducted on April 24, 2003, prior to Docherty and Jeross entering pleas. The court asked Docherty if she was represented by Pitts, and if she had retained him as her attorney. *See* April 24, 2004 Tr. at 3. Docherty responded "yes" to both questions. *Id.* The court then stated:

> Now, what I want to explain to both [Jeross and Docherty] is this, that I have been told that Mr. Blake and Mr. Pitts share some office space, that that is the extent of their relationship, that they're not parties together, their financial dealings are separate. Each of you, Ms. Docherty, and you, Mr. Jeross, are paying your respective attorneys without any reference to or relationship between Mr. Blake and Mr. Pitts; do you understand that?

*Id.* at 3-4. Docherty responded twice that she did. The court continued:

> Now, let me also further advise you that I have to inquire about the propriety of joint representation, and I have to personally advise each of you that you're entitled to the effective assistance of counsel including separate representation. And unless there is good cause to believe there is no conflict of interest that could possibly arise, I can protect each Defendant's right to Counsel. That's why I'm inquiring into this. . . . Do you have any difficulty with the fact that Mr. Blake and Mr. Pitts share office space and that their agreement for representation is separate as to you each, Ms. Docherty?

*Id.* at 4. Docherty responded: "I'm fine with that." *Id.* The court then inquired into the relationship between Pitts and Blake on the record and was informed by counsel that they simply "share[d] office space, everything else is separate." *Id.* at 5. The Assistant United States Attorney then asked Docherty and Jeross if they "waive[d] any such conflicts [of interest] if one does exist?" *Id.* Both Docherty and Jeross responded in the affirmative. *Id.*

    2. <u>Guilty Plea and Sentencing</u>

Immediately following the completion of the conflict of interest hearing, Docherty entered a guilty plea on all counts, and was subsequently sentenced to 188 months' imprisonment. Docherty expressly denied that she had been forced or pressured to plead

guilty, though she now contends that she was not guilty of two of the offenses charged in the indictment, that she truthfully advised the Court during her plea that she had never given ecstacy pills to Leto, and that Pitts told her during a break in the plea that she had to plead guilty to all offenses. Docherty Aff. ¶ 8. Docherty's initial sentence was vacated by stipulation and remanded by the Sixth Circuit in light of the Supreme Court's holding in *United States v. Booker*, 534 U.S. 220 (2005). On November 15, 2006, she was resentenced to her original term of imprisonment. *See* Docket no. 143. The Sixth Circuit affirmed the re-sentencing, *see United States v. Jeross*, 521 F.3d 562 (6th Cir. 2008), and the Supreme Court denied Docherty's petition for a writ of certiorari.

## ANALYSIS

Docherty alleges that she received ineffective assistance of counsel because Blake and Pitts labored under an actual conflict of interest during the plea stage of her case. Docherty contends that the conflict of interest resulted in counsel's failure to negotiate a cooperation agreement, in Pitts's gross mischaracterization of Docherty's actual sentence exposure to her detriment, and in Pitts's leaving her alone during her debriefing with the government.

Docherty requests that an evidentiary hearing be held on the motion. "A prisoner who files a motion under section 2255 is entitled to 'a prompt hearing' at which the district court is to 'determine the issues and make findings of fact and conclusions of law with respect thereto.'" *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting 28 U.S.C. § 2255). A hearing should be held "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (citation omitted). The "petitioner's burden for establishing an

evidentiary hearing is relatively light." *Smith*, 248 F.3d at 551 (internal citation and quotation marks omitted). A hearing may be denied, however, "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Moreover, a hearing should be "tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which . . . the section 2255 motion is made." *Smith*, 348 F.3d at 550-51. In addition, a court may order the parties "to expand the record by submitting additional materials relating to the petition," which will temporarily obviate the need for an evidentiary hearing, and may permit the court to decide the matter on the merits.[2]

### A. Waiver

First, the government contends that Docherty at least in part, if not fully, waived her right to raise ineffective assistance of counsel due to a conflict of interest. Docherty contends that she did not waive her rights because 1) the court did not inquire into the fee arrangement or into the issue of concurrent representation, and therefore, did not adequately explain to her the dangers of the potential Blake / Pitts conflict of interest and 2) regardless, her waiver was involuntary because of threats issued against her by Jeross, from which Pitts failed to protect her.

### 1. Legal Standard

Because "'[c]ourts indulge every reasonable presumption against waiver of

---

[2] The parties were previously ordered to expand the record, *see* docket no. 182.

fundamental constitutional rights,'" a waiver will only be recognized as valid when it is "made knowingly, intelligently, and voluntarily." *Newman v. United States*, No. 96-6326, 1998 U.S. App. LEXIS 20565, at *9 n.1 (6th Cir. 1998) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal citation and quotation marks omitted)). In the context of waiving a right to conflict-free representation, the Sixth Circuit has explained:

> A valid waiver of the right to conflict-free representation requires the active participation of the trial court. *See United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975). *Accord United States v. Levine*, 794 F.2d 1203, 1206 (7th Cir. 1986). Thus, "in order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *United States v. Winkle*, 722 F.2d 605, 611 (10th Cir. 1983) (quoting *United States v. Martinez*, 630 F.2d 361, 364 (5th Cir. 1980), *cert. denied*, 450 U.S. 922, 67 L. Ed. 2d 351, 101 S. Ct. 1373 (1981)) . . . .

*Id.* Whether the waiver was voluntary, knowing, and intelligent will depend "upon the particular facts and circumstances surrounding that case, including background, experience, and conduct of the accused." *Johnson*, 304 U.S. at 464.

2. <u>Knowing Waiver</u>

Docherty argues that she did not waive her right to bring a claim for ineffective assistance of counsel based on conflict of interest because the court failed to inquire into the fee arrangement, namely whether Pitts was paid out of a retainer given to Blake by Jeross, and, if so, whether Docherty fully understood the attendant risks of this fee arrangement. Entangled in Docherty's argument is her assertion that she did not waive the conflict of interest created by Blake's concurrent representation of both Docherty and Jeross after her August 2002 arrest. In support, Docherty relies on *Christunas v. United States*, No. 97-40162, 2008 U.S. Dist. LEXIS 6973 (E.D. Mich. 2008). In *Christunas*, the

8

court held that the petitioner had not effectively waived a conflict of interest because he was not aware of the full extent of the conflict of interest or the consequences of that conflict. *Id.* at *11.

The present case is distinguishable from *Christunas* because Docherty does not argue that she was unaware of the extent of the conflict of interest. Rather, Docherty's claim rests on the contention that she was ignorant as to the consequences of the conflict of interest, and that "the Court failed to advise [her] of the foregoing risks, sufficient to trigger a knowing and intelligent waiver of the conflict." Reply Br. to Mot. to Vacate at 8 (docket no. 167).

The record belies this argument. First, the court asked Docherty if she had any problem with the fact that Blake and Pitts were "not parties together, their financial dealings are separate," and advised Docherty that she had a right to separate counsel. April 24, 2004 Tr. at 3-4. And although the court was informed that Pitts and Blake simply shared office space, and therefore, did not specifically address the alleged fee arrangement or Blake's concurrent representation, Docherty – a well-educated woman – was aware of the potential sources of conflict and of her right to separate counsel. Docherty's contention that she was confused by the court's questioning does not change this conclusion because the hearing presented Docherty with a chance to address that confusion and raise the conflict of interest with the court. Accordingly, she may not now raise the claims that she failed to raise before the court during the conflict of interest hearing. *See McHayle v. United States*, No. 88-80858, 2007 U.S. Dist. LEXIS 33247, at *5 (E.D. Mich. May 7, 2007) ("Petitioner . . . never disclosed to the court the possibility of any conflict or that there was a problem with representation. Under these circumstances, this court must find that there was an

9

implied waiver of any potential conflict of interest on the part of counsel.").

    3. <u>Voluntary Waiver</u>

Docherty also contends that the waiver was involuntary because Jeross threatened her. Docherty claims that Jeross's threats made her unable to freely inform the court of any conflicts and how they affected her counsel. Docherty argues that Pitts was aware of the threats, but did nothing to protect her. Thus, Docherty asserts that she "had little true opportunity – in a stark courtroom surrounded by Jeross, Pitts and Blake – to dissent in any way from being represented by those three." Reply Br. to Mot. to Vacate at 6. In response to these claims, the parties were ordered to expand the record on the issue of whether Pitts had been informed, prior to the plea hearing on April 24, 2003, of threats posed by Jeross against Docherty, and, if so, what actions he took in response to that information. Order Directing Parties to Expand the Record at 2.

In Docherty's initial filings, she presented evidence that Jeross had told Docherty that he would pay her legal fees and that she should "keep her mouth shut." Alex Shannon Aff. ¶ 2. In materials submitted after the parties were directed to expand the record, however, Docherty contends that she "was not threatened by Jeross until after her plea hearing. The threat was in anticipation of, and intended to thwart, Ms. Docherty's meeting with the government to debrief after her plea but prior to her sentencing." Docherty Response to Expand Record at 6; Docherty Aff. ¶ 7; Docherty Supp. Aff. ¶ 9. Accordingly, the record conclusively demonstrates that Docherty's claim that the waiver was involuntary is without merit.

The Court, therefore, finds that Docherty has waived her right to assert claims based on an alleged conflict of interest, and that an evidentiary hearing is unwarranted.

B. Pitts's Ineffective Assistance of Counsel

Docherty also maintains that regardless of the alleged conflict of interest, Pitts's misleading advice regarding the nature of the plea and Docherty's sentence exposure in and of itself amounted to ineffective assistance of counsel.

1. Legal Standard

To prevail on a § 2255 motion, "a defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Newman*, 1998 U.S. App. LEXIS 20565, at *6-7 (internal citation and quotation marks omitted).

A criminal defendant has the right to assistance of counsel pursuant to the Sixth Amendment. U.S. Const. amend. VI. "Derivative of [this] right . . . is the right to have counsel provide effective assistance[.]" *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). "[A]ssistance which is ineffective in preserving fairness does not meet the constitutional mandate[.]" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that 1) "counsel's representation fell below an objective standard of reasonableness," and 2) counsel's deficient performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). For counsel's performance to be deemed deficient, it must be "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance "must be highly deferential." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The petitioner must overcome the presumption that counsel's challenged conduct was sound trial

11

strategy. *Id.* at 689. Moreover, to satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

    2. Analysis

Docherty contends that Pitts's misleading advice itself was ineffective assistance of counsel irrespective of a conflict of interest because it is counsel's duty to inform a client of their options, including whether to accept a plea offer, whether to pursue a plea or sentence concession based on cooperation, or whether to go to trial. The crux of Docherty's argument is that Pitts was ineffective because he mischaracterized her sentence exposure by informing her that she would only be held accountable for the controlled substances which she personally delivered, possessed with intent to deliver, or aided others in possessing or distributing. Docherty Aff. ¶ 6. She contends that even though the court advised her of her actual sentence exposure during her plea, she believed Pitts's contention that he would challenge the government's proposed guideline range.

With regard to the performance prong of *Strickland*, courts have held that where an attorney grossly underestimates a defendant's sentence exposure, the attorney's performance was deficient. *See United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("By grossly underestimating [defendant's] sentencing exposure in a letter to his client, [counsel] breached his duty as a defense lawyer in a criminal case . . . . [and his] legal assistance fell below the prevailing professional norms for advising a client during plea negotiations of his maximum exposure to imprisonment at sentencing." (internal quotation marks omitted)); *United States v. Day*, 969 F.2d 39 (3d Cir. 1992) (holding that counsel was

ineffective where defendant rejected a five year plea deal after counsel underestimated sentence exposure causing defendant to receive a twenty-two year sentence). Accordingly, Docherty may be able to demonstrate that Pitts's performance was deficient.

But Docherty cannot demonstrate prejudice resulting from Pitts's alleged mischaracterization of her sentence exposure. First, unlike *Day*, in which counsel's misguided advice resulted in defendant receiving a sentence substantially higher than that offered in the plea agreement, there is no evidence that Pitts's advice prejudiced Docherty. Although Docherty contends that Pitts's advice increased her sentence by 10 years, there is no support for this contention. In fact, in the Rule 11 plea agreement offered by the government, which agreed to plead Docherty to only Count One of the indictment and drop all other charges, the guideline range calculated by the government was 188 months to 235 months, with the government suggesting that she receive no more than 212 months. *See* Rule 11 Plea Agreement (docket no. 188). Docherty has not contended that she was not guilty of count one, nor has she asserted that her decision to plead guilty to count one was involuntary. And moreover, regardless of the plea agreement, Docherty does not deny that she was fully advised by the court as to her full sentencing exposure. Accordingly, she cannot demonstrate that Pitts's alleged mischaracterization of her sentence exposure resulted in actual prejudice.

To the extent that Docherty contends that Pitts failed to ever present her with the Rule 11 plea agreement offered by the government, she has failed to state a claim entitling her to relief. Although counsel may be ineffective where they fail to present a defendant with all of their options, including plea deals, *see Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), Docherty cannot demonstrate prejudice arising from this alleged failure. First,

Docherty does not claim that she would not have pleaded guilty but for Pitts's failure. *Id.* at 736 (holding that relief under § 2255 should be granted only when petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."). Further, Docherty was sentenced to the minimum term of imprisonment contained in the range offered by the Rule 11 plea agreement. *Id.* at 739 (holding that substantial disparity between plea offered by government and actual sentence imposed was sufficient to warrant evidentiary hearing on counsel's failure to present plea agreement to defendant).[3]

And, insofar as Docherty attempts to contend that Pitts's failure to advise her to pursue a plea or cooperation agreement containing a sentence concession amounted to ineffective assistance of counsel, the Sixth Circuit has advised that "[t]he alleged denial of an opportunity to plea bargain does not permit collateral relief under § 2255." *Anderson v. United States*, No. 99-5204, 2000 U.S. App. LEXIS 17934, at * 5 (6th Cir. July 11, 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("there is no constitutional right to plea bargain."). Accordingly, the record conclusively demonstrates that Docherty's ineffective assistance of counsel claim is without merit.

C. Docherty's Other Motions

After the parties were ordered to expand the record, Docherty filed two additional

---

[3] Accordingly, this case is distinguishable from *Boria v. Keane*, 99 F.3d 492 (2nd Cir. 1996), on which Docherty relies. In *Boria*, defense counsel was deemed ineffective because counsel allowed defendant to reject a plea deal resulting in a one to three year sentence without advising defendant against doing so. *Id.* at 492. The court held that this was ineffective because counsel knew that it was "almost impossible" for the defendant to obtain an acquittal on the charges, and defendant ultimately received a sentence of twenty years to life. *Id.* at 492, 497.

motions. First, Docherty moved to depose witnesses, issue subpoenas for bank records and attorney-client files, appoint a magistrate to act as an officer for depositions, and extend time for completion of discovery. Second, Docherty filed an ex parte motion to allow a polygraph of Docherty to be taken at the federal correctional facility. Because the Court concludes – based on the current record – that Docherty's § 2255 motion is without merit, these two motions are denied as moot.

Docherty also moved for bond pending disposition of her § 2255 motion. A petitioner may be released on bond during § 2255 proceedings if the petitioner demonstrates: 1) "a substantial claim of law based on the facts surrounding the petition" and 2) "the existence of some circumstances making the motion for bail exceptional and deserving of special treatment in the interests of justice." *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (internal citation and quotation marks omitted). "There will be few occasions where a prisoner will meet this standard." *Id.* Federal courts, for instance, may grant bail when granting the petition. *See Sizemore v. Dist. Ct.*, 735 F.2d 204, 208 (6th Cir. 1984). "By implication, a federal court should not grant bail under other circumstances." *Gross v. United States*, No. 06-10551, 2006 U.S. Dist. LEXIS 56607, at *2 (E.D. Mich. Aug. 14, 2006). Because the Court has denied Docherty's § 2255 motion, her motion for bail is also denied.

D. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings mandates that a district court either issue or deny a certificate of appealability when it enters its final order. A certificate of appealability is appropriate "only if the applicant has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2255(c)(2). If the court issues

a certificate of appealability, it must "indicate what specific issue or issues satisfy the showing required by paragraph (2)." 28 U.S.C. § 2255(c)(3). For the reasons set forth in this opinion, Docherty has not made a substantial showing that her constitutional rights were violated, and, accordingly, a certificate of appealability is denied.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that Petitioner's motion to vacate sentence (docket no. 161) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's motion to depose witnesses (docket no. 183) and ex parte motion for order allowing polygraph examination (docket no. 184) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Petitioner's second motion for bond awaiting final disposition of 2255 motion (docket no. 192) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 8, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 8, 2011, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager